IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

DR. RICHARD P.  JOHNSON,

     Plaintiff,

v.                                                                    **Case No. 08-2472**

JAMES B. PEAKE, Secretary of Veterans Affairs,
DEPARTMENT OF VETERANS AFFAIRS,

     Defendant.

MEMORANDUM OPINION ON DEFENDANT'S
MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

Defendant Secretary of Veterans Affairs James B. Peake ("Defendant") filed a motion to dismiss or in the alternative for summary judgment on December 7, 2009.  (D.E. #35.)  On January 11, 2010, Plaintiff Richard P. Johnson ("Plaintiff") filed a response in opposition to Defendant's motion.  By order dated June 1, 2010, the Court denied Defendant's motion and stated that an opinion providing the Court's reasoning would be issued at a later date.  The Court now issues this opinion setting forth the reasons for denial of Defendant's motion.

**I. BACKGROUND**[1]

The Department of Veterans Affairs hired Plaintiff as a psychiatrist in 1979 and in October 1987 promoted him to Chief of Psychiatry and Director of Mental Health Services at the Veterans Affairs ("VA") Hospital in Memphis, Tennessee.  In 1991, approximately four years after his promotion, Plaintiff received treatment for alcohol and drug addiction.  On April 11, 1991, Plaintiff entered into a continuing care plan by which he promised to maintain his sobriety,

_____

[1] The following facts are taken from the parties' statements of undisputed facts unless otherwise indicated.

submit to regular drug and alcohol screenings, and regularly attend aftercare meetings.  Plaintiff remained as Chief of Psychiatry and Director of Mental Health Services until he resigned from the VA in December 2006 or early 2007.[2]

In February 2004, Patricia Pittman ("Pittman") was appointed Medical Center Director of the Memphis, Tennessee VA.  (Pittman Dep. at 23.)  After Pittman began working at the Memphis VA, several incidents occurred leading up to Plaintiff's resignation and commencement of legal action.  On June 10, 2004, Pittman sent an email to Dr. Howard Bromley ("Dr. Bromley")—Chief of Staff at the Memphis VA and Plaintiff's direct supervisor— regarding a Mental Health Report that was submitted late. (Def. Ex. 119 to Mot. for Summ. J.) Later that year, Pittman sent another email to Dr. Bromley expressing concern about the performance of the Mental Health Services Division.  Dr. Bromley forwarded the e-mail to Plaintiff on October 12, 2004 alerting him of Pittman's frustrations.  (Def. Ex. 120 to Mot. for Summ. J.)

In January 2005, Dr. Bromley and Pittman met with a physician employed by the University of Tennessee to discuss the merits of a vascular surgeon who was seeking employment with the Memphis VA.  The candidate had a history of drug abuse.  (Def. Ex. 198 to Mot. for Summ. J.)[3]  A few days later, Plaintiff told Pittman at a meeting that he was in recovery for chemical dependency.  He also told Pittman that he would not be able to complete work due at upcoming meetings scheduled with Pittman.  (Johnson Dep. at 41-44; Bromley Dep. at 147-48.)  Shortly after Plaintiff's January 27, 2005 statement to Pittman, Dr. Bromley formally counseled Plaintiff for the delayed submission of his staff evaluations.  (Ex. 200 to Def. Mot for

---

[2] The date of Plaintiff's resignation is disputed.  Defendant alleges Plaintiff resigned in early 2007, while Plaintiff provides December 2006 as his end date.  (See VonButtlar Dep. at 32.)

[3] Defendant denies that Pittman stated at this meeting that she would not hire a physician with a history of chemical dependence.  (Pl.'s Statements of Facts, "SOF" 57; Bromley Dep. at 184.)

Summ. J.; Bromley Dep. at 76-77.)  On January 31, 2005, Pittman notified Dr. Bromley that she was canceling a scheduled meeting due to the absence of Plaintiff and Plaintiff's administrative assistant.  (Pittman Dep. at 416-19; Bromley Dep. at 78-83.)  Pittman continued to express dissatisfaction with various areas of the Mental Health Services Division at the VA in memos and emails sent to Dr. Bromley and Plaintiff.  (Ex. 126-27 to Def. Mot. for Summ J.; Bromley Dep. at 82-85.)  In March 2005, while discussing the employment history of another physician, Pittman again inquired of Dr. Bromley whether Plaintiff possessed a history of drug abuse.  Dr. Bromley responded affirmatively, adding that he never had reason to question Plaintiff's work performance.  (Bromley Dep. at 74-76.)[4]

On August 18, 2005, a patient admitted to the VA Mental Health Services Unit committed suicide.  The VA responded by initiating a root cause analysis to determine the underlying cause of this event.  (Ex. 13 to Def. Mot. for Summ. J.)  Despite the suicide, Dr. Bromley rated Plaintiff's work performance as excellent during the period of October 1, 2004 to August 6, 2005.  (Ex. 92 to Def. Mot. for Summ. J.; Bromley Dep. at 145-46.)  Pittman disagreed with certain elements of Dr. Bromley's assessment, and on December 7, 2005 Pittman lowered Plaintiff's evaluation to minimally satisfactory and removed him from his position as service chief.  (Ex. 92 to Def. Mot. for Summ. J.; Pittman Dep. at 310-28.)

Following this employment action, Plaintiff filed a formal Equal Employment Opportunity ("EEO") complaint with the Office of Resolution Management ("ORM")[5] on January 23, 2006, alleging disability discrimination and harassment.  (Ex. 2 to Johnson Dep.; Decl. of Linda Buffer to Def. Mot. for Summ. J.)  On January 31, 2006, Plaintiff and Pittman

---

[4] Dr. Bromley informed Dr. Johnson of this conversation in March 2007 after Dr. Johnson resigned from the Memphis VA.  (Johnson Dep. at 69-70.)

[5] EEO complaints filed by VA employees are accepted and processed through ORM.

met to discuss the EEO complaint.  At the meeting, Pittman produced a copy of the complaint and raised the issue of Plaintiff taking a fitness for duty exam.  (Pittman Dep. at 365-66.) Following this incident, on February 6, 2006, Plaintiff amended his EEO complaint to include the events of the meeting, namely the production of the EEO complaint by Pittman and the discussion of the fitness for duty test.  (See Ex. 3 to Def. Mot. for Summ. J.; Linda Buffer Decl. ¶ 4.)

Two months later on April 3, 2006, Plaintiff was assigned to work on compensation and pension patient care cases.  (VonButtlar Dep. at 48; Ex. 138 to Def. Mot for Summ. J.) Displeased with the new assignment, Plaintiff requested reassignment to handle cases of Post-Traumatic Stress Disorder ("PTSD").[6]  Plaintiff reiterated his request for reassignment on several occasions.  (Exs. 139-42, 144-46 to Def. Mot. for Summ. J.)  On April 19, 2006, Plaintiff submitted a note from his physician stating that Plaintiff should "alternate sit/stand every 15-20 minutes as needed until further evaluated in 2 months" to alleviate his back pain while performing evaluations.  (Ex. 58 to Def. Mot. for Summ. J.)  Additionally, Plaintiff requested to move to another office in the Mental Health Center.  (Ex. 167-68 to Def. Mot. for Summ. J.)

On April 25, 2006, Plaintiff sent an email again requesting reassignment to PTSD cases as an accommodation for his back.  (Ex. 59 to Def. Mot for Summ J.)  On April 27, 2006, an EEO Program officer in the VA replied to Plaintiff advising him that he could not be accommodated without further documentation and paperwork.  (Id.)  Plaintiff indicated that he would provide the additional documentation and submitted it on August 28, 2006.  (Id.)  On September 8, 2006, EEO Officer Sharoon McHellon notified Plaintiff that his request for reasonable accommodation was denied and advised him of his rights concerning the denial.  (Ex.

---

[6] The parties agree that work on PTSD cases is considered more challenging and prestigious than work on pension and compensation claims.

4

76 to Pl. Resp. to Mot. for Summ. J.)   Plaintiff filed suit on September 24, 2008 alleging discrimination on the basis of perceived disability and retaliation pursuant to the Americans with Disabilities Act, 42 U.S.C §§ 1201 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 et seq.

## II. LEGAL STANDARD

### A. Standard for Motion to Dismiss under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure only tests whether a cognizable claim has been pled.  Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).  To determine whether a motion to dismiss should be granted, the court examines the complaint, which must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  See Fed. R. Civ. P. 8(a)(2).  It must also provide the defendant with fair notice of the plaintiff's claim as well as the grounds upon which it rests. Conley v. Gibson, 355 U.S. 41, 47 (1957); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). While the complaint need not present detailed factual allegations, to be cognizable it must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Scheid, 859 F.2d at 436-37.

Likewise, the complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555 (citation omitted).  The mere possibility that some set of undisclosed facts will support recovery is insufficient to overcome a 12(b)(6) challenge.  Twombly, 550 U.S. at 561; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").  On a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual

allegations made in the complaint and construes them in the light most favorable to the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989); Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295-96 (6th Cir. 2008); Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983).  The court, however, only takes as true well-pled facts, and it will not accept legal conclusions or unwarranted factual inferences.  Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 405-06 (6th Cir. 1998); see Iqbal, 129 S. Ct. at 1949.

**B. Summary Judgment Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Although hearsay evidence may not be considered on a motion for summary judgment, Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Thaddeus-X v. Blatter, 175 F.3d 378, 400 (6th Cir. 1999).  The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case.  Id. at 325.  This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the

nonmoving party's evidence to show why it does not support a judgment for the nonmoving party.  10A Charles A. Wright et al., Federal Practice and Procedure § 2727 (3d ed. 1998).

Once a properly supported motion for summary judgment has been made, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586.

## III. ANALYSIS

Plaintiff's complaint asserts causes of action for unlawful intentional discrimination on the basis of disability in violation of both the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 et seq., as well as causes of action under the ADA and the Rehabilitation Act for retaliation against Plaintiff for engaging in the protected activity of opposing disability discrimination.  Because Plaintiff seeks recovery and redress for disability discrimination by the federal government while in its employ, Plaintiff's claims are cognizable under the Rehabilitation Act rather than the ADA.  See 42 U.S.C. § 12111(5)(B) (excluding the United States government from the definition of an "employer" under the ADA); Peltier v. United States, 388 F.3d 984, 989 (6th Cir. 2004) ("[T]he Rehabilitation Act . . . provides the remedy for federal employees alleging disability discrimination[.]").  Nevertheless, the Rehabilitation Act explicitly incorporates the legal standards of the ADA, see 29 U.S.C. § 791(g), and judicial decisions applying the ADA are

thereby applicable to Rehabilitation Act cases as well, see Plautz v. Potter, 156 F. App'x 812, 816 (6th Cir. 2005).

Defendant first argues that certain of Plaintiff's claims must be dismissed under Rule 12(b)(6) because Plaintiff failed to exhaust his administrative remedies. The remainder of Plaintiff's complaint, Defendant contends, must be dismissed under Rule 56.

## A. Exhaustion of Administrative Remedies

Plaintiff first objects to consideration of Defendant's arguments as to exhaustion under Rule 12(b)(6). As Plaintiff notes, Defendant filed his answer on October 14, 2008—more than a year before filing the instant motion—and a motion under Rule 12(b) "must be made before pleading . . . ." Fed. R. Civ. P. 12(b). Additionally, although Defendant moves for dismissal under Rule 12(b)(6), Defendant relies upon evidence outside of the pleadings, which is impermissible on a Rule 12(b)(6) motion to dismiss. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Accordingly, Defendant's arguments as to exhaustion of administrative remedies must be construed as a motion for summary judgment under Rule 56. See, e.g., Flowers v. Potter, No. 3:05-cv-052, 2008 WL 697630, at *8 n.8 (S.D. Ohio 2008) (addressing failure to exhaust under Rule 12(b)(6) and Rule 56 rather than Rule 12(b)(1) and analogizing exhaustion to a statute of limitations).

The Sixth Circuit has held that a plaintiff bringing a claim pursuant the Rehabilitation Act must first seek redress through available administrative processes. Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir. 1992). Exhaustion of administrative remedies is intended to prompt an investigation, place the alleged wrongdoer on notice of the charge, and provide an opportunity

for conciliation and settlement prior to the initiation of formal legal action.   See Dixon v. Ashcroft, 392 F.3d 212, 217 (6th Cir. 2004); see also Benford v. Frank, 943 F.2d 609, 612 (6th Cir. 1991).   The requirement that a plaintiff exhaust administrative remedies, however, "is not meant to be overly rigid, nor should it result in the restriction of subsequent complaints based on procedural technicalities. . . . As a result, . . . [an EEO charge] should be liberally construed to encompass all claims reasonably expected to grow out of the charge of discrimination." Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 732 (6th Cir. 2006) (internal quotation marks and citations omitted).   Even assuming that the Rehabilitation Act's exhaustion requirement is—as Defendant argues—jurisdictional and that the Court would thus lack jurisdiction over Plaintiff's claims in the absence of administrative exhaustion, compare Hill v. Nicholson, No. 09-5305, 2010 WL 2640261, at *3 (6th Cir. June 24, 2010) (discussing Arbaugh v. Y & H Corp., 546 U.S. 500 (2006) and Allen v. Highlands Hosp. Corp., 545 F.3d 387, 401-02 (6th Cir. 2008)) with Steiner v. Henderson, 354 F.3d 432, 434-35 (6th Cir. 2003), the Court finds that Defendant's arguments regarding administrative exhaustion are without merit.

Defendant asserts that Plaintiff filed his last EEO charge with ORM on January 23, 2006 and last amended that charge on February 9, 2006, thus precluding Plaintiff from suing for any acts of discrimination and retaliation occurring after his last amendment.   More specifically, Defendant asserts that the Court is without jurisdiction over Plaintiff's allegations that Defendant discriminated or retaliated against him by altering his work assignment from PTSD cases to compensation and pension claims, by failing to accommodate his back problems, by denying him a leave of absence in October or November 2006, by deeming him AWOL in late 2006, and by constructively discharging him.   Defendant relies upon an affidavit from Linda Buffer, an

administrative officer with ORM, stating that Plaintiff never filed an EEO complaint or amendment raising any of these issues with ORM.

Defendant's position is contradicted by other evidence in the record regarding the manner in which Plaintiff pursued his grievances with ORM. According to the evidence Plaintiff cites, ORM sent Plaintiff a letter dated April 6, 2006 acknowledging Plaintiff's amendment to his January 2006 complaint to include reassignment from PTSD cases to compensation and pension claims. Furthermore, in September 2006, Plaintiff wrote to ORM to amend his complaint to include allegations that Defendant changed Plaintiff's office in spite of the fact that there was an abundance of office space and Plaintiff was suffering from back pain. ORM responded with a letter stating that it found these allegations to be "inextricably intertwined" with Plaintiff's prior charge and that his allegations constituted additional support for his claims of discrimination rather than a new claim. This evidence supports Plaintiff's contention that he thereby apprised ORM of the bases for his subsequent suit, including the bases for his constructive discharge claim, and thus exhausted his administrative remedies.

Moreover, the Court agrees that Plaintiff's subsequent allegations naturally grew out of his earlier EEO filings. Under the scope of investigation test outlined in Weigel v. Baptist Hospital of East Tennessee, "[a] judicial complaint must be limited to the scope of the . . . investigation reasonably expected to grow out of the charge of discrimination." 302 F.3d 367, 480 (6th Cir. 2002). "[W]here facts related with respect to the charged claim would prompt the . . . [agency] . . . to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." Id. In analyzing an EEO complaint, a court must read a plaintiff's claims liberally "to encompass all claims 'reasonably expected to grow out of the charge of discrimination.'" Randolph, 453 F.3d at 732 (quoting Haithcock v. Frank, 958 F.2d 671, 675

(6th Cir. 1992) (internal quotation marks and citation omitted)).  Defendant's alleged actions following Plaintiff's initial EEO charge can be fairly interpreted as constituting a continuing pattern of harassment and retaliation ultimately resulting in Plaintiff's constructive discharge. Also, having complained to ORM of actions that continually created an environment that a reasonable employee would find intolerable, Plaintiff was under no obligation to file a separate EEO charge for constructive discharge as it was a natural and probable consequence of the pattern of actions to which Defendant was allegedly subjecting Plaintiff.  Thus, even if every particular allegation Plaintiff now alleges was not noted in a separate EEO charge, the actions complained of can be viewed as growing out of Plaintiff's other allegations to ORM. Accordingly, Defendant has failed to establish that there is no genuine issue of material fact entitling him to judgment as a matter of law as to Plaintiff's administrative exhaustion of his claims.

**B. Claim for Disability Discrimination**

Defendant next argues that Plaintiff fails to establish a prima facie case of disability discrimination.  Plaintiff responds by arguing that the record contains direct evidence of discrimination and that, even if the Court does not find that the record contains direct evidence, Plaintiff has nonetheless established a prima facie case of discrimination.

In cases of alleged discrimination, the framework for analyzing a claim depends upon whether the plaintiff relies on direct evidence of disability discrimination or whether the plaintiff relies on indirect evidence of such discrimination.  Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1184-85 (6th Cir. 1996).  "[D]irect evidence [of discrimination] is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn, 176 F.3d at 926.  Unlike indirect evidence, "direct evidence of

discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group."  Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003); see also Grizzell v. City of Columbus, 461 F.3d 711, 719 (6th Cir. 2006) (direct evidence "proves the existence of a fact without requiring an inference").

In the instant case, the Court agrees with Plaintiff that the record contains direct evidence of disability discrimination by Defendant.  Specifically, according to the testimony of Dr. Bromley, Pittman stated to him in January 2005 that she would never hire a physician recovering from chemical dependency, and shortly thereafter Plaintiff informed Pittman of his history of chemical dependency.  Dr. Bromley also testified that in March 2005 Pittman asked him whether he was aware of Plaintiff's history of chemical dependency.  Dr. Bromley further testified that at that time Pittman repeated her statement that she would not hire a physician who had suffered from chemical dependency.  Not long afterward, Pittman demanded that Plaintiff resign as Chief of Psychiatry and Mental Health Services or face disciplinary proceedings, which could result in the loss of his pension.

Plaintiff cites the Eleventh Circuit case of Burns v. Gadsden State Community College, 908 F.2d 1512 (11th Cir. 1990), to support his argument that Pittman's actions constitute direct evidence of discrimination.  In Burns, the court of appeals held that the plaintiff presented direct evidence of gender discrimination where the position for which she was rejected was known as a "B scheduled job" and she presented evidence that the decision maker had previously stated that "no woman would be named to a B scheduled job."  908 F.2d at 1518.  Likewise, in the present case, Plaintiff presents evidence that the decision maker, Pittman, stated that she would never hire a physician recovering from chemical dependency.  Plaintiff's evidence requires no

inference to establish Pittman's discriminatory motive for her subsequent adverse treatment of Plaintiff and therefore, as in Burns, constitutes direct evidence of discrimination. Thus, Plaintiff is not required to establish a prima facie case of discrimination and rely upon indirect evidence to sustain his allegations. See Monette, 90 F.3d at 1180. Because of this direct evidence, the burden shifts to Defendant "to show that it would have taken the employment action of which the plaintiff complains even in the absence of discrimination," White v. Columbus Metro. Housing Auth., 429 F.3d 232, 238 (6th Cir. 2005), which Defendant has not done.

Additionally, even in the absence of direct evidence of discrimination, Plaintiff easily satisfies the requirements for a prima facie case. "To make out a prima facie employment discrimination case under either . . . [the ADA or the Rehabilitation Act], a plaintiff must show (1) that she or he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation, and (3) who was discriminated against solely because of the disability." Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2002) (italics removed). Defendant contests only one aspect of Plaintiff's ability to establish a prima facie case—the requirement that Plaintiff qualify as "disabled" under the Rehabilitation Act. See 29 U.S.C. § 706(B); 45 C.F.R. § 84.3(j)(2)(iii) (defining a handicapped person as one having "a history of, or [who] has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities"). Chemical dependency qualifies as an impairment under the Rehabilitation Act if it substantially limits one or more major life activities. See MX Group, Inc. v. City of Covington, 293 F.3d 326, 336 (6th Cir. 2002). The record indisputably indicates that Plaintiff suffered from chemical dependency, a condition which necessitated his entry into the Tennessee Medical Association's Impaired Physician's Peer Review Program in 1991 and for which he remains subject to monitoring and supervision.

Pittman became aware of this fact shortly before Plaintiff began to suffer adverse employment action.  Furthermore, Defendant fails to establish that Pittman did not regard Plaintiff as disabled in spite of his past history of chemical dependency.  Thus, Plaintiff also satisfies the requirements for a prima facie case.[7]

## C. Claim for Disability Harassment

Next, Defendant argues that Plaintiff's evidence fails to establish a prima facie case of disability harassment under the Rehabilitation Act.  The standard for establishing a harassment or hostile work environment claim under the Rehabilitation Act requires a plaintiff to prove: "(1) he was disabled; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment unreasonably interfered with his work performance; and (5) defendant either knew or should have known about the harassment and failed to take corrective measures."  Plautz, 156 F. App'x at 818.  "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances . . . . [including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993).

Defendant attempts to isolate each alleged act to show that, even if the act occurred as Plaintiff alleges, it could not constitute harassment and that because each act was separate and discrete, Plaintiff was not subjected to a continuing pattern of harassment.  Plaintiff, in contrast, argues that the individual incidents cannot be viewed in isolation and that, taken together, they reveal a pattern of continuous and repeated acts of retaliation and harassment over more than a year.  The evidence upon which Plaintiff relies includes: (1) Pittman's threatening Plaintiff with

---

[7] Defendant also contests Plaintiff's ability to use his back pain to establish his disability discrimination claim. Plaintiff's response clarifies, however, that evidence regarding Defendant's failure to accommodate his back pain is evidence of harassment and retaliation, not an independent claim.

a fitness for duty exam; (2) Defendant's reassigning Plaintiff from PTSD cases to compensation and pension evaluations, which is considered a less prestigious type of assignment; (3) Plaintiff's inability to take breaks to relieve his back pain because of his assignment to compensation and pension evaluation; (4) Defendant's decision to put Plaintiff in an office with cracked tiles, improper ventilation, and no computer; (5) Defendant's forcing Plaintiff to work at a pace he was not physically capable of performing; and (6) Defendant's deeming Plaintiff AWOL and docking his pay when he took leave that was properly approved.  As a result of this course of events, Plaintiff not only suffered physical pain in his back, but also had to obtain counseling for work-induced stress and ultimately resigned.  Based upon the record, the Court finds that Plaintiff's evidence, if accepted, presents a sufficient factual basis from which a jury could properly conclude that Defendant subjected Plaintiff to a hostile working environment.

**D. Claim for Retaliation**

Finally, Defendant argues that Plaintiff has not established a prima facie claim for retaliation under the Rehabilitation Act.  Defendant further argues that even if Plaintiff has presented a prima facie claim of retaliation, Defendant has articulated a legitimate, non-discriminatory reason for its actions.

"[T]he anti-retaliation provision of the Rehabilitation Act, which incorporates by reference § 12203(a) of the ADA, provides in relevant part that '[n]o person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by this Act.'"  Hiler v. Brown, 177 F.3d 542, 545 (quoting 29 U.S.C. § 794(a) (1994)).   To prevail on a claim for retaliation under the ADA or Rehabilitation Act, a plaintiff must show "(1) that he engaged in protected activity; (2) that he suffered adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse action."  Sullivan v.

15

River Valley Sch. Dist., 197 F.3d 804, 814 (6th Cir. 1999) (quoting Penny v. United Parcel Serv., 128 F.3d 408, 417 (6th Cir. 1997)).  The plaintiff must prove that he was subject to a "materially adverse" employment action, which the Supreme Court has defined as an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted).  A plaintiff demonstrates a causal connection between the protected activity and the adverse action by producing sufficient evidence from which the finder of fact at trial could reasonably infer that the adverse action would not have been taken had the plaintiff not engaged in protected activity.  Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).

In the instant case, the protected activity in question is Plaintiff's filing of an EEO charge.  Plaintiff argues that the record contains direct evidence of retaliation.  The Court agrees.  According to Plaintiff, Pittman threatened Plaintiff with a fitness for duty examination while holding his EEO charge in her hand.  Other evidence indicates that upper management—namely, Pittman—thereafter controlled Plaintiff's work assignments and that Plaintiff's intermediate supervisors stated that they were powerless to reassign him from compensation and pension examination duty.  The Court finds that this evidence, particularly when considered with Defendant's other actions towards Plaintiff—including threatening him with a fitness for duty exam and erroneously deeming him AWOL—presents a sufficient basis from which a reasonable factfinder could conclude that Plaintiff suffered an adverse employment action as a result of his protected activity.  Moreover, even if this does not constitute direct evidence, it certainly constitutes indirect evidence sufficient to establish a prima facie case of retaliation following his

filing of an EEO charge.[8]  See, e.g., McNeail-Tunstall v. Marsh USA, 307 F. Supp. 2d 955, 973 (W.D. Tenn. 2004) ("A causal connection can be shown through direct evidence or through knowledge on the part of the defendant plus a closeness in time that creates an inference of causation."); see also Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.").

Defendant attempts to establish a legitimate, non-discriminatory reason for his actions by listing a series of events that occurred prior to December 2005.  Specifically, Defendant relies upon evidence to argue that Defendant removed Plaintiff from his position performing PTSD reviews in the Mental Health Unit because of deficiencies in the Mental Health Unit's performance that needed to be corrected.  Even if this explains Defendant's change of Plaintiff's assignments from PTSD cases, it would still leave unaddressed the pattern of other harassing actions to which Plaintiff was subjected, including threatening Plaintiff with a fitness for duty exam and deeming Plaintiff AWOL.  Therefore, the Court finds that Defendant has failed to articulate a legitimate, non-discriminatory reason for its challenged actions.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss and for summary judgment is **DENIED**.

**IT IS SO ORDERED**, this 17th day of August, 2010.

s/Bernice Bouie Donald
**BERNICE BOUIE DONALD**
**UNITED STATES DISTRICT JUDGE**

---

[8] The only aspect of Plaintiff's retaliation claim that Defendant challenges is Plaintiff's ability to show causation.